# Hull et al. v. W. T. Reynolds Lumber Company et al.

## Same v. Shearer et al.

(Decided February 5, 1929.)

678

E. BERTRAM for appellants.

J. M. KENNEDY for appellees.

Opinion of the Court by Judge Clay—Reversing.

Cordell Hull and others were the owners of the timber on six different tracts of land located in Wayne county. On August 14, 1926, they conveyed the hardwood timber to the W. T. Reynolds Lumber Company. The consideration was $17,500 of which $14,500 was paid in cash and a 90-day note executed for the balance of $3,000. The same day they conveyed the softwood timber to S. J. Shearer and J. R. Duncan and W. G. Duncan, the consideration being $10,000, of which $8,000 was paid in cash, and a 90-day note executed for the balance of $2,-000. Separate suits were brought by the grantors against the purchasers to recover on the notes. In their original answer, the defendants relied on a breach of warranty, in that there was a failure of title to the timber on about 15 acres included in the deed as a part of tract No. 2. This defense was afterwards abandoned, and the defendants in each action filed an amended answer and counterclaim, pleading, in substance, that before they purchased the timber, and before the deed was made, plaintiffs, their agents, servants, and employees, went upon tract No. 2 and undertook to, and did, point out the extent of the boundary and the outside lines of that tract; that the boundary so pointed out included the timber on about 15 acres of land that was afterwards recovered by one Campbell; and that but for such representations they would not have purchased the timber. The two cases were consolidated and heard together. On its counterclaim, the W. T. Reynolds Lumber Company was awarded damages in the sum of $1,300, which was credited on the $3,000. The counterclaim of Shearer and others was

sustained to the extent of $750, which was credited on the $2,000 note. From the judgment so rendered these appeals are prosecuted, and will be considered in one opinion.

Appellants are nonresidents, and A. Casteel and Stonewall J. Bell of Monticello were their agents to look after the timber and find a purchaser therefor. In the early part of 1925 W. T. Reynolds, of the Reynolds Lumber Company, opened negotiations for the purchase of the timber with Casteel and Bell, but no agreement was reached. In the early summer of 1926 Reynolds, Shearer, and J. R. Duncan again began negotiations for the purchase of the timber. After several discussions with Casteel and Bell, Reynolds and J. R. Duncan requested Casteel to go with them to Carthage, Tenn., where appellants resided, for the purpose of discussing the deal with Judge Hull, who represented the other appellants, and who had the largest interest in the timber. The trip to Carthage was made shortly prior to August 14, 1926. At that time the price was agreed on, and the deal was closed. The agreed price for all the timber was $27,500. By agreement between the purchasers, the Reynolds Lumber Company was to take the hardwood timber for $17,500, while Shearer and Duncan were to take all the softwood at the price of $10,000. All the witnesses admit that Mr. Hull said that he knew nothing about the lines. Though denied by Hull, Reynolds and Duncan claim that Hull said that Bell had made a complete survey; that the lines were well marked; and that Bell would show them the lines. Reynolds and Duncan both say that, before the deed was delivered, Bell did show them the lines, and the lines as shown them included the 15 acres. This is emphatically denied by Bell. Shortly after the purchasers began cutting the timber, they were enjoined from cutting the timber in controversy by A. W. Campbell, who afterwards recovered the land. There is a sharp conflict as to the acreage involved and as to the quantity and character of the timber. It further appears that the defendants in each action asked and obtained two extensions of their notes without claiming or suggesting at the time that there was any misrepresentation as to boundary. These are not cases where the purchaser seeks reimbursement for a material deficiency in the quantity of timber actually conveyed. As finally pleaded and tried, the counterclaims are based on misrepresentations as to boundary, and are therefore founded in deceit.

From the earliest times it has been the rule that, where the vendor actually misrepresents the boundary of land or timber conveyed so as to cover land or timber not owned by the grantor, and not included in the conveyance, and the purchaser relies upon such misrepresentations, and is thereby induced to make the purchase, he will be entitled to an abatement of the purchase price to the extent of the loss sustained, and it is wholly immaterial whether the misrepresentation is innocently or fraudulently made.

Thus in the case of East v. Matheny, 1 A. K. Marsh. 192, 10 Am. Dec. 721, Matheny purchased of East two improved lots then inclosed with a fence. After making additional improvements, Matheny discovered that these improvements, together with a portion of those made before his purchase, though within the fence, were outside the true boundary of the lot. Proof showed that East represented to Matheny that the fence was the boundary, and that this representation, though innocently made, was untrue in fact. The court held that it was not necessary to show fraud, and approved a judgment awarding Matheny compensation for the loss of the improvements. In the case of Young v. Hopkins, 6 T. B. Mon. 18, it was held that, where the vendor sold an estate and represented to the purchaser that he owned the whole, when in fact he owned but half of it, the purchaser should be relieved to the extent of one-half of the purchase money, although he had since purchased the other half of the estate for a less sum than half the stipulated value. In the case of Logan's Adm'r v. Bryant, 44 S. W. 435, 19 Ky. Law Rep. 1774, it was held that, where the vendor represented the boundary as containing 40 acres, when in fact it contained not more than 17 acres, the purchaser was entitled to a credit on the price for the deficiency estimated at the contract price. In the case of Purdy v. Batsell's Adm'r, 15 S. W. 514, 12 Ky. Law Rep. 792, it was held that, where the vendor represented in good faith that a certain spring was on the land sold when in fact it was not on the land, the vendee was entitled to be compensated for the loss. In the case of Lee v. Read Lumber Co., 148 Ky. 690, 147 S. W. 436, the vendor misrepresented the quantity of timber sold, and it was held that the purchaser, who was thereby deceived, and who had already paid more than the value of the timber at the agreed price, should not be required to pay anything more on the contract. In view of these authori-

ties, we are constrained to the opinion that a false representation as to the boundary of the timber sold will entitle the purchaser to an abatement of the purchase price, where he relies on such misrepresentation, and is thereby induced to make the purchase. We are also of the opinion that the evidence was sufficient to take the case to the jury.

Instruction No. 1, given by the court, is as follows:

"If the jury believe from the evidence that the agents of the plaintiff prior to the acceptance of deeds by the defendants in both of the actions on trial, went on the land in controversy with the defendants and pointed out to the said defendants the lines which run near or with the old fence and stated and represented to them positively and unequivocally that this was the true and correct line, known in the deeds as the Andy Campbell line, you will find for the defendants on their counterclaim, but if you do not so believe you will find against the defendants on their counterclaim."

It is true that an instruction in practically the same words was given in the case of Prowse v. Henderson, 155 Ky. 317, 159 S. W. 808, and that the judgment in that case was affirmed. In that case, however, the purchaser lost, and it was not necessary to pass on the propriety of the instruction. Manifestly, something more is required than the pointing out of an incorrect boundary. This may have occurred and yet have played no part whatever in the consummation of the sale. To authorize an abatement of the purchase price in a case like this not only must the representations as to boundaries be false, but the purchaser must be misled by such false representations and thereby induced to make the purchase. The failure to incorporate this idea in the instruction renders it erroneous.

On another trial the court will exclude from the jury all representations alleged to have been made by Bell after the delivery of the deed.

In view of the conclusion of the court, it is unnecessary to determine whether or not the damages allowed on each of the counterclaims were excessive.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.